KATHERINE C. SPALDING, Respondent, v. COLUMBIA THEATRE COMPANY, Appellant.

St. Louis Court of Appeals, April 6, 1915.

1. **LANDLORD AND TENANT: Trade Fixtures: Ownership of Fixtures Installed by Tenant.** Where the lessee of a theatre building, holding for a term of five years with the privilege to

renew for an additional period of five years, under a lease which provided that the lessee should deliver up the premises, at the expiration of the tenancy, "in like good order in which they were at the time of the letting," replaced opera chairs, which it removed from the building and subsequently sold, with new chairs, which it attached to the floor, such new chairs became fixtures permanently affixed to the freehold as part of the landlord's property.

2.   ———: ———: ———.   The law looks with favor on a tenant's right to remove, as personalty, such articles as fall within the term "trade fixtures."

3.   ———: ———: ———.   Though, apart from contract, a tenant may have the right to remove ordinary trade fixtures installed by him as a part and parcel of his plant or equipment (subject to certain limitations), it does not follow that he has the same right with respect to the removal of fixtures which he has substituted for others of a like character belonging to the landlord.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm*, Judge.

Affirmed.

*Reynolds & Harlan* for appellant.

(1) In an action of replevin, the burden is on the plaintiff under a general denial to establish his title to the property in question, and his right to the immediate and exclusive possession thereof. Morgner v. Biggs, 46 Mo. 65; Phillips v. Schall, 21 Mo. App. 38; Gray v. Parker; 38 Mo. 165; Andrews v. Castocan, 30 Mo. App. 29; Steffen v. Long, 165 Mo. App. 254. (2) Whether a chattel has become an immovable fixture consists in the united application of the following tests: (a) Has there been a real or constructive annexation of the article in question to the realty; (b) Was there a fitness or adaptation of such article to the uses and purposes of the realty with which it is connected; (c) Whether or not it was the intention of the party making the annexation that the chattels should become a permanent accession to the freehold,

this intention being inferable from the nature of the article, the relation and situation of the parties interested, the policy of the law in respect thereto, the mode of annexation, and the purposes or uses for which the annexation is made. And of these three tests, prominence is to be given the intention to make the article a permanent accession to the freehold while the. others are generally of value as evidence of this intention. Ottumwa Iron Works v. Muir, 126 Mo. App. 582; Hatton v. Railroad, 253 Mo. 660; Press Brick & Machinery Co. v. Brick & Quarry Co., 151 Mo. 512; Banner Iron Works v. Iron Works, 143 Mo. App. 1; McLain Investment Co. v. Cunningham, 113 Mo. App. 519; Baldwin v. Merrick, 1 Mo. App. 281; Loan v. Gregg, 55 Mo. App. 581; Cooke v. McNeil, 49 Mo. App. 81; Red Diamond Clo. Co. v. Stiedman, 169 Mo. App. 306, Andrews v. Chandler, 27 Ill. App. 103; Chapman v. Life Ins. Co., 4 Ill. App. 26; New Castle Theatre Co. v. Ward (Ind. App. 1914), 104 N. E. 526; Robinson v. Harrison, 237 Pa. St. 613; Metropolitan Concert Co. v. Sperry, 9 N. Y. St. 342, affirmed in 120 N. Y. 620. (3) And this is the true test even though the chattel has been actually affixed to the realty, provided it may be removed without serious injury to the freehold or to itself. Ambs v. Hill, 10 Mo. App. 108; Goodin v. Elleardsville Hall Ass'n., 5 Mo. App. 289; McLain Investment Co. v. Cunningham, 113 Mo. App. 519; Loan v. Gregg, 55 Mo. App. 581; Banner Iron Works v. Iron Works, 143 Mo. App. 1; Bircher v. Parker, 40 Mo. 118; Morrison v. Sohn, 90 Mo. App. 76; Kuhlman v. Meier, 7 Mo. App. 260; Powell v. McAshan, 28 Mo. 70; Philadelphia Mortgage Co. v. Miller, 20 Wash. 607, 44 L. R. A. 559; Cooper v. Johnson, 143 Mass. 108; Blancke v. Rogers, 26 N. J. Eq. 563; Metropolitan Concert Co. v. Sperry, 9 N. Y. St. 342; affirmed in 120 N. Y. 620; Andrews v. Chandler, 27 Ill. App. 103; Chapman v. Life Ins. Co., 4 Ill. App. 26; Hanrahan v. O'Reilly, 102 Mass. 201; Ombony v. Jones, 19 N. Y. 234; Hatton v.

Railroad, 253 Mo. 660; New Castle Theatre Co. v. Ward, 104 N. E. 526; Forbes v. Alabama Machinery & Supply Co. (Ala. 1912), 58 So. 398; Webber v. Franklin Brewing Co. (App. Div.), 108 N. Y. Supp. 251; Walker v. Tillis, 66 So. 54. (4) The common-law rule relating to fixtures has been relaxed in its application to landlord and tenant, and the rule between vendor and vendee, and mortgagor and mortgagee does not apply. Tyler v. White, 68 Mo. App. 607; McLain Investment Co. v. Cunningham, 113 Mo. App. 519; Baldwin v. Merrick, 1 Mo. App. 281; Davis v. Dugan, 56 Mo. App. 311; Hardware Co. v. Lead & Zinc Co., 153 Mo. App. 393; Thomas v. Davis, 76 Mo. 72; Bircher v. Parker, 40 Mo. 118; State v. Newkirk, 49 Mo. 84; Sharp v. Insurance Co., 160 Mo. App. 475; Rogers v. Crow, 40 Mo. 91; Kuhlman v. Meier, 7 Mo. App. 260; Powell v. McAshan, 28 Mo. 70; Hanrahan v. O'Reilly, 102 Mass. 201; New Castle Theatre Co. v. Ward, 104 N. E. 526.

*Edward A. Feehan* for respondent.

(1) Opera chairs, firmly screwed to the floor of a theatre, and arranged and placed to conform with the plan of the auditorium, are a part of the realty, unless it clearly appears that it was the intention of the parties, at the time the chairs were installed, to regard them as chattels. Such chairs are not trade fixtures. New York Life Ins. Co. v. Allison, 107 Fed. 179; Murray v. Bender, 125 Fed. 705; Temple Co. v. Insurance Co., 69 N. J. L. 36; Oliver v. Lansing, 59 Neb. 219; Grosz v. Jackson, 6 Daly (N. Y.) 463. (2) Where a tenant, without the knowledge or consent of the landlord, substitutes other fixtures for those which he finds upon the leased premises, and destroys or disposes of the old fixtures so that he cannot replace them, the substituted fixtures become the property of the landlord; and this regardless of whether or not the fix-

tures in question be technical "fixtures" or mere chattels. Hay v. Tillyer (N. J.), 14 Atl. 18; Ashby v. Ashby, 59 N. J. Eq. 536; Ex parte Hemenway, 2 Lowell, 496; Whiting v. Brastow, 4 Pick. 310; Pond v. O'Connor, 70 Minn. 266; McLain Inv. Co. v. Cunningham, 113 Mo. App. 519. (3) Where a tenant enters into a new lease of the same premises, without reserving any rights as to fixtures therein, the fixtures become the property of the landlord, unless it clearly appears that they were originally the property of the tenant, that he installed them with the intention of removing them, and that they are "trade fixtures" adapted to the business of the tenant, and not fixtures which are an integral part of the leased premises. Williams v. Lane, 62 Mo. App. 66; Champ Spring Co. v. Roth, 103 Mo. App. 103; St. Louis v. Nelson, 108 Mo. App. 210; Clothing Co. v. Steideman, 169 Mo. App. 306.

ALLEN, J.—This is a suit in replevin for the possession of a certain lot of opera chairs. The petition avers that plaintiff is the owner and entitled to the possession of the property, of the value of $1500, and that defendant wrongfully detains the same from her. Judgment is prayed for the recovery thereof, and damages for the detention. The answer is a general denial.

The trial before the court, without the intervention of a jury, resulted in a judgment in plaintiff's favor for the possession of the property, and for one cent damages for the detention thereof; and the case is here upon the defendant's appeal.

On February 7, 1911, plaintiff, being the owner of a lot of ground in the city of St. Louis, with improvements thereon known as the "Havlin Theatre Building," leased the property to the St. Louis Theatre Company, a corporation, for a term of five years begining on September 15, 1911, and with the privilege on the part of the lessee to extend the term of the lease

for an additional period of five years. The lease provided that at the expiration of the tenancy the lessee would deliver up the premises "in like good order" in which they were at the time of the letting, ordinary wear and tear and damages by the elements excepted.

The premises included a theatre which had been operated as such for many years. The lower floor thereof was equipped with opera chairs which had been in use for perhaps ten years. In the summer of 1911 the lessee made certain repairs to the interior of the theatre, and removed the opera chairs above mentioned and installed new chairs in their stead. The lessee stored the old chairs until February, 1912, when it sold them. It does not appear that plaintiff was consulted as to this, or that she had any knowledge thereof. It seems that by April 30, 1912, the lessee had become in default in the payment of rents reserved, and plaintiff caused the lessee to be served with a thirty days' notice of forfeiture of the lease, in accordance with the terms thereof. After the service of this notice, and before the expiration of the thirty days' period, the lessee removed the new opera chairs and caused them to be stored on the premises of the defendant from whose possession they were taken under the writ of replevin issued herein.

Plaintiff's case, of course, proceeds upon the theory that the opera chairs involved in the action, i. e., those installed by the lessee and afterwards removed by it, became a permanent accession to the freehold, when substituted for the old chairs and affixed to the floor of the building, whereby title thereto passed to plaintiff. Defendant, on the other hand, contends that, as between the landlord and the tenant, the chairs thus installed by the latter retained their original character as personalty, the title thereto remaining in the lessee.

The lease is silent as to the right of the lessee to remove fixtures of any character. The matter is therefore not affected by any positive agreement between

the landlord and the tenant relative to the right of the latter to remove fixtures installed by it.

The chairs may be termed fixtures, whatever may be the tenant's right to remove them under the circumstances shown in evidence. Though there were about 770 seats on the floor in question, they did not consist of that number of detached chairs, but were installed in sections or rows, varying in length according to the seating arrangement, the seats in each being in some manner connected. It appears that any number of chairs could be put in a section by placing them between certain end castings. They were firmly fastened to the floor by screws, which was necessary, if for no other reason, to keep them from tipping over.

In New York Life Insurance Co. v. Allison, 107 Fed. 179, it was held that, as between mortgagor and mortgagee, opera chairs, so arranged in an auditorium and affixed to the floor thereof, were presumably intended as permanent attachments to the building, and consequently a part of the realty, in the absence of circumstances indicating a contrary intention. In Murray v. Bender, 125 Fed. 705, it was held that opera chairs, installed as these, would pass to an execution purchaser of the realty. In Oliver v. Lansing, 59 Neb. 219, it was held that such articles passed to the purchaser of the premises at a sale in partition. See, also, Temple Co. v. Insurance Co., 69 N. J. L. Rep. 36, where the contest was between mortgagees, and Grosz v. Jackson et al., 6 Daly (N. Y.), 463, which was a suit to foreclose a mechanic's lien.

The question here arises, however, between landlord and tenant, in which case the law looks with favor upon the right of the tenant to remove, as personalty, such articles as fall within the term "trade fixtures." [See Red Diamond Clothing Co. v. Steideman, 169 Mo. App. 306, 152 S. W. 609; Weeks-Betts Hdw. Co. v. Lead & Zinc Co., 153 Mo. App. 387, 134 S. W. 35; Bircher v. Parker, 40 Mo. 118; 19 Cyc. 1065.]

In New Castle Theatre Co. v. Ward, 104 N. E. 526 (Ind. App. 1914), upon which appellant greatly relies, it was held that a tenant was entitled to remove, as trade fixtures, opera chairs which, with the landlord's consent, had been placed by the tenant in a building previously used as a skating rink and affixed to the floor thereof by screws, for the purpose of enabling the tenant to operate the building as a theatre. The chairs were not, as here, substituted for like fixtures found in an auditorium, and necessary to the normal use thereof. Upon the facts of the case the ruling appears to be in accordance with settled principles, but it is not persuasive authority in the present case. See, also, Concert Co. v. Sperry, 9 N. Y. St. Rep. 342, affirmed in 120 N. Y. 620, and Andrews v. Chandler, 27 Ill. App. 103, involving fixtures of the same character, but neither of which are here directly in point.

In the case before us we regard it as a matter of prime importance that the chairs in question were substituted by the lessee for other such fixtures permanently annexed to the premises at the time of the letting, and presumptively belonging to the lessor. Though, apart from contract, a tenant may have the right to remove ordinary trade fixtures installed by him as a part and parcel of his plant or equipment—subject to certain limitations—it does not follow that he has the same right with respect to the removal of fixtures which he has substituted for others of a like character belonging to the landlord. [See 19 Cyc., 1065.]

In Investment Co. v. Cunningham, 113 Mo. App. 519, 87 S. W. 605, it was held that a tenant had the right to remove a steam heating boiler which he had installed in lieu of one originally upon the premises, where the latter had been temporarily set aside, and was replaced upon restoring the premises to the owner. There was some evidence of an agreement giving this right, but it was said that in any event the boiler thus

installed by the tenant did not become the property of
the landlord, as an accession to the realty. In the case
before us, however, the original chairs were not re-
tained and reinstalled in order that the premises might
be surrendered in the condition in which they were when
let. We have no doubt that by removing fixtures form-
ing an essential part of the equipment of the building
for the purposes for which it was adapted, and dispos-
ing of the same so that they could not be reinstalled
and substituting others in their stead, the lessee must
be held to have permanently affixed the latter to the
freehold so that they became the property of the land-
lord. In Ashby v. Ashby, 59 N. J. Eq. 536, it was so
held in a case of this general character, and the doc-
trine appears to be altogether sound. There the de-
fendant came into the possession of a mill containing,
as a part of the mill equipment, certain machines which
he afterwards removed and converted to his own use,
installing others in their places. The court said: ''The
defendant, by his own uninvited act of removing the
previous machines and putting the new ones in their
place has irrecoverably made the latter a part of the
plant. Having so dealt with them, he has made them
of the essence of the realty, and the extent of the an-
nexation is of little significance.'' In this connection,
see, also: Hay v. Tillyer, 14 Atl. 18 (N. J.); Pond and
Hasey Co. v. O'Connor, 70 Minn. 266; Ex parte Hem-
enway, 2 Lowell, 496; Whiting v. Brastow, 4 Pick.
(Mass.) 310.

In controversies of this character between land-
lord and tenant, the liberal indulgence toward the claim
of the tenant is predicated in a large measure upon
the assumption that in placing chattels upon the de-
mised premises, though in some manner affixed thereto,
to adapt the same to the uses for which the premises
were let, it was the intention of the tenant to remove
them, and that the landlord so understood. [See Davis
v. Mugan, 56 Mo. App. l. c. 316.] But it is to be here

inferred from the facts shown in evidence that there was no such intention on the part of the tenant, or understanding on the part of the landlord.

The tenant had a lease which, at its option, permitted it to occupy the premises for a period of ten years. And it is a reasonable inference that in removing and selling the original chairs which had been used for about ten years and were worn, and installing others in their stead, the lessee intended that the latter —which might be expected to likewise become old and worn during the tenancy—should take the place of the former, as permanent fixtures in the building which would thus be ultimately surrendered equipped as when let. Clearly the lessee did not intend to replace the original fixtures, upon surrendering possession to the owner, as was done in Investment Co. v. Cunningham, supra, for it disposed of them. And the presumption is to be indulged that in so doing the lessee intended no wrong, as by a wrongful conversion of plaintiff's property, but regarded the old chairs as its property because of the fact that they had been replaced with others as permanent attachments to the building.

And it may readily be inferred, under the circumstances, that having let the building fully equipped with opera chairs, the landlord assumed that it would be surrendered by the tenant so equipped, either with the original chairs or with such others as the tenant might see fit to install in the meantime.

The conclusion which we have reached is also in keeping with the provision in the lease to the effect that the lessee would restore the premises in ''like good order'' as when let, except for ordinary wear and tear and damages by the elements. The original opera chairs constituted an essential part and parcel of that portion of the demised premises used as a theatre necessary to the use thereof for the purposes to which it was adapted. And under the circumstances it would not be a compliance with the terms of the lease, on the

part of the lessee, to surrender the premises with the theatre stripped of such fixtures.

The suggestion that plaintiff should be put to an action for the conversion of the original chairs is sufficiently disposed of by what we have said above. The judgment should be affirmed, and it is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.