Pettibone, J.,
delivered the opinion of 'the Court.
This was an action of trover, brought by Mullanphy, against Hunt, in the ‘Court below, for a stone slab and copper boiler. There was'a special verdict found, oh which a judgment was rendered in favor of the plaintiff, for the boiler, and for the defendant, as to.the slab. To reverse the judgment in favor of the plaintiff, the defendant brings his writ of error. It is only necessary, therefore, to examine the case as it respects the boilgr, and the only point to be considered, is, whether it was a fixture, the facts set out in the special verdict, are, in substance, as follows: that sometime before the commencement of the suit in the Court below, one Theodore Hunt was seized and possessed of a certain lot of grohnd in the town of St. Louis, whereon was a tan-yard and a currying shop) and whereon were also sundry articles of personal property, called the stock of the said yard and shop; that before the commencement of the said suit, Theodore Hunt mortgaged the said lot to the plaintiff in the suit below; that after the mortgage, and before the commencement of the said suit, Theodore Hunt sold and delivered all the stock of the said yard and *362 shop to the defendant; and also, that after the said sale, and before the commencement of the suit, the Sheriff of St. Louis county, under an execution against the said Theodore Hunt, sold, and by deed conveyed the said lot to the said plaintiff in the .suit help w. The special verdict also finds, that in a house, standing on the said mortgaged premises, in the space between the chimney and the side wall of the said house, .tjiere stood the boiler in question, made of copper, built into a furnace erected for that purpose, with brick and mortar, so as to hide the said boiler, except the edge or mputh of the same;; that from the furnace, underneath the said boiler, proceeded a flue, conducted along the side of the chimney, and closed at the top ; and that in the side of the chimney, and covered by the flue, was a hole pierced through the side of the chimney, into the flue thereof, so as to permit the passage of the smoke; that the brick work of tlie said furnace, and the flue thereof, were not interlaced with the brick work of the said chimney, but was capable of being taken down, without injuring the chimney, any otherwise than by laying bare the hole of communication, between the flue of the furnace and the flue of Hie chimney. The said verdict also finds, that the defendant, while in possession of said premises, removed tfierefropj, and converted to his own use, the said boiler; that the said ■ boiler was in the situation above described, at the time of the execution of the said mortgage, and continued in the same situation for some time ofter the execution of the said deed from the Sheriff, above mentioned. There is nothing in the verdict, which shows with what intention, or for what purpose, the boiler was thus affixed in the said building.
The case, therefoi;e, presents the naked question, whether property, personal in its character, thus affixed, becomes .prima facia a part of the realty, so as to pass by a deed of the land.
There can he np question, but tfiat a copper kettle, or boiler, abstractly considered is of a personal character. It is, in its nature, moveable, and may be used in any place where the wants or convenience of the owner .may require it, and the character of it is not changed by the manner in which the philosophy, economy, or convenience of the oyvner may .cause him, from time to time, to put it in use. It is, therefore, deemed altogether immaterial, as it respects its character as personal property, whether it is set in a furnace, suspended upon a crane, or standing upon its legs, unless there are other circumstances to connect it with the realty. Kettles set in a furnace, with “ brick and mortar,” for the purpose of making sugar at a sugar camp, as is often the case, would hardly be considered so attached to the soil as to pass by a deed of the land; hut things, personal in their nature, may become a part of the realty in two ways. First. By incorporating them with the realty, as a part thereof, for some permanent object. Second. By affixing them to the realty, for any object, in such a manner, that they cannot he severed, without dilapidation or injury to the. inheritance.
As an example under the first head: — the nails and plank which compose the door of a house, or the rails which .compose a fence, are, before their appropriation to these particular objects, of a personal character, but by their application and by the intention of the owner, they become a part of the realty, and pass with the land, notwithstanding they might be severed from it without violence or dilapidation of the inheritance. So it is in the power of the owner to annex almost every thing of a personal character to the soil, and make it a part of the realty; or, on the contrary, at his pleasure, to dissever almost every thing, and make it a part oLthe personalty. *363 But where property, which is personal in its nature, is claimed as belonging to the freehold, the party claiming it must show, that its character has been changed by some facts or circumstances which will clearly prove theintention of the owner thus to change it. As between grantor and grantee, what will pass as real estate, must depend altogether upon the intention of the parties,-to be gathered from their deed. If the grantee claims any thing.which is, in its character, personal, he must show that it was differently considered in the deeds For instance, it is laid down-in-the books, and we conceive it to be’good law, that annexations to the freehold for the' purposes of.trade and manufactures, are of a personal character.- If, then, a lot'were conveyed by a general description, as so much land, bounded in a particular manner, without saying any thing further, the grantor would still he allowed to remove every thing which might be dissevered without violence to the freehold, which has been placed there for the purpose of trade.- But if the deed conveyed the land, together with the manufactory thereon, the evident intention of the parties would be,•that every thing annexed to the freehold, which was necessary to carry on the manu-' factory, should pass, and would pass accordingly.- In the present case, the deed was merely for a lot of land. But if it had been also- for the tannery thereon, still there' is nothing in the ease which shows that the boiler in question was any way connected w-ith the tannery,-nor is there any other circumstance which shows that it was permanently annexed t'o'the- freehold, so as to he considered- a part thereof. The hare fact of its being set in briek and mortar, does not afford that presumption.-
The only remaining point to be considered, is, whether the boiler was so affixed to • the premises, that it- could' not be removed without violence or injury to the inheritance.
The special verdict finds that not only the boiler, but the furnace and flue, might be removed, without any other injury to the building than laying bare a hole already existing in the chimney. This can be no- dilapidation. Nothing, is tom or taken-from the building. The flue itself has not oven been removed.- The judgment of the Circuit Courtj in favor of the plaintiff, must1 he reversed, and defendant must recover his costs in this'Court, and in the Court below.